In the ESTATE OF: Florence M. BELL, Deceased.

Justin M. Bell, Appellant,

v.

Roland Bell, Randy Bell, Dennis Bell, Marc Bell and Allison Bell, Husband and Wife, and Kevin Anderson, Personal Representative, Respondents.

No. WD 69776.

Missouri Court of Appeals, Western District.

Sept. 15, 2009.

Dennis Owens and Jonathan Sternberg, Kansas City, Richard A. Koehler, Butler, MO, for Appellant Justin M. Bell.

Harold L. Caskey and William C. Hopkins, II, Butler, MO, for Respondent Roland Bell.

Matthew D. Lowe, Clinton, MO, for Respondents Dennis Bell and Randy Bell.

Eric M. Landoll, Nevada, MO, for Respondents Marc Bell and Allison Bell.

Kevin K. Anderson, Harrisonville, MO, Personal Representative of the Estate of Florence M. Bell.

Before Division II: VICTOR C. HOWARD, Presiding Judge, and JOSEPH M. ELLIS and MARK D. PFEIFFER, Judges.

MARK D. PFEIFFER, Judge.

Justin Bell appeals the trial court's judgment approving the Estate of Florence M. Bell's ("the Estate") personal representative's compromise settlement on Justin Bell's petition for discovery of assets. On appeal, Justin Bell has one point in which he claims that the trial court erred in approving the personal representative's settlement because there was no evidence at the hearing from which the trial court could conclude that the settlement is in the best interest of the Estate. We agree.

Florence Bell died on December 24, 2004. Florence Bell's will devised her entire estate to Randy Bell and Dennis Bell to hold in trust for the benefit of Justin

Bell. On March 7, 2007, Justin Bell filed his third-amended petition for discovery of assets in which he sought to recapture the Estate's assets that were conveyed by the Estate's trustees, Randy Bell and Dennis Bell, to various third parties. The trial court set the case for trial by jury to take place on April 23, 2008.

On April 16, 2008, the Estate's personal representative [1] filed a motion to review and determine whether a proposed compromise settlement of the discovery of assets proceeding should or should not be approved and requested an evidentiary hearing regarding the settlement offer. The trial court scheduled the hearing for the next day, April 17, 2008. The hearing took place at the scheduled time. During the hearing, the personal representative stated that the defendants offered to settle the claim with the Estate for $325,000. The personal representative argued to the trial court that he believed the settlement offer was reasonable. Justin Bell's attorney objected to the personal representative's unsworn commentary on the basis that the personal representative's opinions constituted argument of counsel, not evidence. Randy and Dennis Bell's attorney suggested that the trial court swear the personal representative in for evidentiary testimony on the topic of whether the settlement proposal was reasonable. The trial court stated that the personal representative did not need to be sworn in because he was an officer of the court. *After* the personal representative had offered his commentary on the reasonableness of the settlement proposal, the trial court did ask the personal representative if he could verify that he was telling the truth in his unsworn commentary that was not subject to cross-examination, and the personal representative stated that he was telling the truth. On May 5, 2008, the trial court entered judgment approving the settlement. This appeal follows.

In his sole point on appeal, Justin Bell claims that the trial court erred in approving the Estate's personal representative's compromise settlement of $325,000 because there was no evidence at the hearing from which the trial court could arrive at the conclusion that the settlement was in the best interest of the Estate.[2]

Section 473.277 [3] of the Missouri Probate Code authorizes the compromise of debts due to the estate. It states:

When it appears for the best interest of the estate, the executor or administrator, on order of the court, may effect a fair and reasonable compromise with any debtor or other obligor, or extend, renew or in any manner modify the terms of any obligation owing to the estate. If the executor or administrator holds a mortgage, pledge or other lien upon property of another person, he may accept, in lieu of foreclosure, a conveyance or transfer of the encumbered assets from the owner thereof in satisfaction of the indebtedness secured by the lien, if it appears for the best interest of the estate and if the court so orders. In the absence of prior authori-

1. The Estate's personal representative is also a duly licensed attorney.

2. In a motion filed with this court, the respondents request that this court dismiss Appellant Justin Bell's brief because it fails to comply with Rule 84.04(c), which requires that his statement of facts be "a fair and concise statement of the facts" of the case. The respondents allege that Bell's

brief contains numerous false argumentative statements. We disagree. Bell's brief was sufficient to provide us with an immediate, complete, and unbiased account of the facts of the case. *White v. State*, 192 S.W.3d 487, 489 (Mo.App. S.D.2006). As such, the motion is denied.

3. All statutory references are to RSMo 2000, unless otherwise indicated.

zation or subsequent approval of the court, no compromise binds the estate.

■ The purpose of section 473.277 is to provide a mechanism for compromise of claims held by an estate. *Campbell v. Campbell,* 898 S.W.2d 630, 632 (Mo.App. W.D.1995). The statutory standard for determining whether or not the trial court may approve a compromise settlement is whether or not the settlement is in the best interest of the estate and whether or not it is fair and reasonable. *Smith v. Snodgrass,* 747 S.W.2d 743, 745 (Mo.App. S.D.1988). The trial court can approve a settlement even when an heir objects to it. *Campbell,* 898 S.W.2d at 632. Whether or not a settlement is in the best interest of the estate is a question of fact for the trial court. *Smith,* 747 S.W.2d at 745. We must give due regard to the trial court's opportunity to adjudge the credibility of *witnesses. Id.*

■ We are, therefore, required to affirm the trial court's ruling on the issue of whether or not the settlement is in the best interest of the estate *unless there is no substantial evidence to support the decision,* it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* (*citing Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)).

In its judgment, the trial court approved a $325,000 settlement for the Estate, stating as follows:

> The compromise involved in the settlement of this litigation made by the Personal Representative and the other Defendants is fair and reasonable and is in the best interest of the Estate. There is a reasonable economic basis for approving the settlement. Accordingly, the Personal Representative should effect the compromise by performing the settlement made with the other Defendants, to-wit: Upon the Personal Representative's prompt receipt of the three hundred twenty-five thousand dollar ($325,000) settlement amount, the Personal Representative should write his receipt therefor, upon which this proceeding should be dismissed in its entirety, with prejudice, at the Estate's cost.

In its judgment, the trial court noted that, in approving the settlement, it relied on the personal representative's "sworn testimony" that the settlement was fair, reasonable, and in the best interest of the Estate:

> [T]his court proceeded under 473.277 RSMo to take *sworn testimony* of the Personal Representative concerning the merits of Plaintiff's claims and the other Defendants' defenses thereto, and the fairness, reasonableness, and benefit to the Estate of the compromise involved in the settlement made, and to hear arguments of counsel.

(Emphasis added.)

We will affirm the trial court's judgment approving the settlement provided there is substantial *evidence* in the record from which the trial court could conclude that the settlement was in the best interest of the Estate.

In *Estate of Asay v. Asay,* 902 S.W.2d 876 (Mo.App. W.D.1995), this court gave examples of the type of evidence that a trial court could use to determine whether or not the settlement is in the best interest of the estate. 902 S.W.2d at 882. In that case, the trial court took judicial notice of the claims filed by one of the parties, the parties' stipulated facts, and the parties' exhibits. *Id.* The trial court also heard *testimony* of the personal representative, which included both direct and cross-examinations. *Id.*

■ In this case, the record shows that the trial court did not take judicial notice

of any court files or any other governmental records like, for example, the county assessor's appraised value of the real property that was the subject of the dispute before the trial court. The record shows that the trial court did not admit any exhibits or documents into evidence at the hearing. Furthermore, there is nothing in the record to show that the parties had agreed on a list of stipulated facts. The trial court, therefore, had no documentary evidence before it to justify approval of the settlement proposal. And, while the trial court recites the taking of "sworn testimony by the personal representative," the record reflects neither the personal representative nor any other witness gave any such sworn testimony.

At the hearing, the personal representative did offer his opinion that $325,000 is a fair and reasonable amount:

> I've participated in this case and observed various pleadings. I've filed pleadings. I've attended depositions. I've looked at the property. I've done my own investigation as to the value. And understand if—if [Bell were] successful on behalf of the estate, he's looking for the return of the farm, plus the value of the cattle and various other items of reimbursement.
>
> Depending on the value of the farm and the values—the value of cattle, which can—obviously, can vary somewhat, in my opinion, a best case scenario is somewhere in the neighborhood of $657,000, give or take. . . .
>
>  . . . .
>
> [T]he defendants in this case . . . have made a combined offer to the Plaintiff of $325,000 to—to settle this case. I think that's well within the range of what could happen. I think that it's a reasonable offer and it needs to be considered and—and approved by the Court[.]
>
>  . . . .

> No case is so good or—that it can't end up with less than what you expect. And, you know, I've—there are—there are legal defenses. There are equitable defenses. There are setoffs that the Defendants are claiming. Which, again, the Court—depending on how you do the math and what is—what is determined by the—the trier of fact, potential recovery is—could be substantially less than $325,000.
>
> And, in fact, depending on the defenses and the ultimate outcome, it could even be zero.

Justin Bell concedes that the personal representative argued at the hearing that, in his opinion, $325,000 is a fair and reasonable amount. Justin Bell maintains, however, that the personal representative's opinions could not be considered competent *evidence* to support the trial court's approval of the settlement. Counsel for Justin Bell responded to the personal representative's unsworn and unverified opinions at the evidentiary hearing as follows:

> Well, your Honor, I guess, first of all, my understanding of—of a proceeding such as this that it would be an evidentiary hearing and it would be based on factual issues presented at an evidentiary hearing. And I think that there is case law that would support that idea.
>
> What the attorneys say at this hearing, and—and it would be the same at the beginning of the trial. What the attorneys say is not evidence. And so I'm not sure that this hearing is appropriate in terms of making a final decision with regard to a compromise in settlement under 473.277.

■ This brings us to the preliminary note of addressing the trial court's conclusion in its judgment that Justin Bell waived his objection because he failed to object to the personal representative's ar-

gumentative statement at the evidentiary hearing. The trial court is correct that, to properly preserve a point on appeal, the party must object to the admission of the evidence at trial. *See Kovacs v. Kovacs*, 869 S.W.2d 789, 792 (Mo.App. W.D.1994). The record at the hearing establishes, however, that Justin Bell did object to the personal representative's statement on the basis that his statement is not evidence. This is the same objection that Justin Bell presents on appeal: that the trial court could not use the personal representative's statement as evidence to support its approval of the settlement. This is sufficient for us to conclude that Justin Bell preserved his point by objecting to the trial court's use of the personal representative's statement as evidence. Furthermore, the general purpose of an objection is to notify the trial court and opposing party of the party's allegation of error. *Khan v. Gutsgell*, 55 S.W.3d 440, 442 (Mo.App. E.D. 2001). In that regard, the record shows that the respondents' attorney suggested to the trial court that it swear the personal representative in. Because of this request, it is obvious that the opposing party and the trial court were aware of Justin Bell's complaint. Thus, Justin Bell preserved his objection regarding the personal representative's statement.

We next address whether the statements and arguments of the personal representative at the evidentiary hearing can constitute competent testimonial evidence to support the trial court's judgment.

In Missouri, there is no "special litany" that is required in administering an oath to a witness. *State v. Ward*, 242 S.W.3d 698, 703 (Mo. banc 2008). For example, section 491.380.2 provides that:

> *Every person* offered as a witness, *before* any testimony shall be given by him, shall be duly sworn, or affirmed, that the evidence he shall give relating to the matter in issue between ........, plaintiff, and ........, defendant, shall be the truth, the whole truth, and nothing but the truth.

(Emphasis added.)

Section 492.030, however, provides an alternative oath and states that:

> Every person who shall declare that he has conscientious scruples against taking an oath or swearing in any form shall be permitted to make his solemn declaration or affirmation in the following form: 'You do solemnly declare and affirm,' etc., concluding with the words 'under the pains and penalties of perjury.'

Although the General Assembly has declared that these are two possible types of oaths, it has also declared that, when a person has a "peculiar mode of swearing connected with or in addition to the usual form of administering oaths, which is to him of more solemn and binding obligation, the court or officer shall adopt that mode which shall appear to be most binding on the conscience of the person to be sworn." § 492.040. Regardless of the form of the oath, the important requirement is that the oath quickens the witness's conscience and creates liability for perjury *before* the witness offers testimony. *Ward*, 242 S.W.3d at 703.

In this case, after the respondents' attorney suggested that the trial court swear the personal representative in, the trial court stated that a formal oath was unnecessary because the personal representative was an officer of the court:

> MR. LOWE: First of all, I might suggest that—that—and—and I don't know if this is necessarily appropriate if this is suppose to maybe be an evidentiary hearing. I might suggest that [the personal representative] be sworn and then maybe testify. He doesn't have to say the same thing he said earlier, but testify to what he said earlier would be

the same thing that he would say under oath. I don't know if that would be necessary or not, but I think that—He—He is an attorney and an officer of the Court and—

THE COURT: Well, [personal representative,] you're—you're an attorney at law and an officer of the Court.

MR. LOWE: Does not have to be sworn.

THE COURT: Are you verifying that what you've indicated to the Court is true as far as you're aware?

MR. ANDERSON: Yes, Judge. And I—I would be happy to be sworn and affirm that.

THE COURT: As an officer of the Court, I don't believe that's necessary.

■ The trial court erred in failing to administer an oath to the personal representative on the basis that he was an officer of the court. In *State ex rel. Scott v. Roper,* 688 S.W.2d 757, 766–67 (Mo. banc 1985), our Missouri Supreme Court commented on the "officer of the court" terminology for lawyers in our country's system of jurisprudence:

> Unfortunately, the oft-repeated doctrine that lawyers are officers of the court and as such may have conditions imposed by the court on their privilege to practice law has been used as an incantation with little or no analysis of what the title means or why a particular result should flow from it. For these reasons, we believe that the time has come to abandon invoking the doctrine that lawyers are officers of the court—or, as some courts suggest, public officers—and lay to rest this anachronism from English legal history. In lieu of the doctrine, decisions should rest upon sound reasoning and analysis.

(Internal citation omitted.)

While we do not believe that this is to suggest that our Supreme Court has abrogated the concept that lawyers have a special fiduciary duty with regard to their candor and integrity while serving as an advocate for their clients before a court of law, we also believe that it is the dictate of our Supreme Court to recognize that, instead of blindly invoking a vague English doctrine, our courts must be guided by principles of sound reasoning and logic for the modern day demands of lawyers and judges. While we believe that the trial court below probably knew the personal representative to be an attorney of high ethical standing in the legal community, it makes sense that our courts require fiduciaries and attorneys to be sworn before giving substantive testimony and to allow such fiduciaries and attorneys to be cross-examined under oath. The concept of a sworn oath is basic to our system of justice, even when we trust certain attorneys in our local legal communities.

■ Accordingly, even if the personal representative were a trusted attorney at law, fiduciary, or otherwise referred to as an officer of the court, it is well-established that a person's designation as such affords him no special privileges when he actively participates as a testimonial witness in a hearing or a trial. *Dickerson v. Dickerson,* 55 S.W.3d 867, 874 (Mo.App. W.D. 2001). An officer of the court is not allowed to give unsworn testimony regarding facts not in evidence or disregard the evidentiary rules of admissibility. *Id.*

In this case, the personal representative was not called by the trial court to summarize *the evidence* that was in the record or make arguments based on *the evidence* in the record. Rather, in this case, there was *no evidence* in the record regarding the value of the land or the factors surrounding the compromise. Instead, the personal representative simply offered his opinions on these issues as an unsworn "officer of

the court." Even though the personal representative was an officer of the court, the trial court was required to administer an oath to him pursuant to sections 491.380.2 or 492.030–040 *before* the personal representative could testify as to his opinion on the value of the land or the fairness of the compromise or both, as a testimonial witness.

In short, Missouri courts require sworn testimony as a procedural safeguard to ensure that the evidence presented is competent and reliable. As Justin Bell's trial counsel pointed out at the evidentiary hearing, there is a significant difference between lawyers offering argument and lawyers serving in the capacity as a testifying witness. In the latter category, the lawyer witness is subject to the rules of evidence as to the foundation required to permit testimony on certain subjects. For example, the personal representative offers his opinion as to the value of the subject real property in dispute, but there is nothing in the record to explain how the personal representative acquired special information, knowledge, or skills to qualify him to render such property value opinions. *Mo. Pipeline Co. v. Wilmes*, 898 S.W.2d 682, 686–87 (Mo.App. E.D.1995) (*quoting State v. Bloomfield Tractor Sales, Inc.*, 381 S.W.2d 20, 24 (Mo.App.1964)) ("One need not be an 'expert,' in the sense that word is ordinarily used, to testify as to the value of land. If the witness knows or has inspected the property, and if he has such information, knowledge, and skill which enable him to form an intelligent judgment, and if this knowledge and information is superior to that possessed by [the fact finder], then he should be permitted to testify.") Had the personal representative been sworn in as a witness, he would have been subject to cross-examination as to his foundational qualifications to render real property valuations or his lack thereof. As it were, though, the trial court

did not require the personal representative to take an oath before asserting his opinions, and the personal representative was not subject to cross-examination by trial counsel for Justin Bell. Hence, we are left with a record that fails to ensure that, even if he had been sworn in before his opinion testimony, the personal representative would have been qualified to render land value opinions.

Furthermore, while it seems patently obvious that a lawyer serving in the dual capacity of a personal representative would be qualified to provide sworn testimony on his expert opinions regarding the trial risks for the Estate, the fact remains that opposing counsel should have had an opportunity to cross-examine the personal representative regarding his opinion on those risks. To the contrary, however, the trial court neither facilitated competent testimony on this topic, nor did the trial court give trial counsel for Justin Bell the opportunity to cross-examine the personal representative on this topic. This court has recognized the significance of cross-examination of witnesses, including the personal representative, in a probate setting in which claim compromise is the subject of the evidentiary hearing. *Estate of Asay*, 902 S.W.2d at 884 ("MBI had an opportunity at the hearing on the compromise settlement to present evidence and cross-examine witnesses as to the variable factors involving risk to the assets of the estate from Mr. Wall's claim.")

Having addressed the purpose for the procedural and practical safeguard of requiring all testimonial witnesses to be sworn upon their oath, we next turn our attention to the exchange between the trial court and the personal representative that the trial court claims to constitute "sworn testimony." The closest the trial court comes to swearing the personal representative in is when the trial court asked the

personal representative if he could verify that his statement was true and the personal representative stated yes. This exchange was insufficient for two reasons.

First, the record shows that this exchange occurred *after* the personal representative's statement. The wording of section 491.380.2 is clear that a witness must be sworn in *"before* [he gives] any testimony." Thus, the trial court's *after*-the-fact exchange was insufficient to swear the personal representative in.

Second, the trial court's exchange was insufficient to swear in the personal representative because the exchange was insufficient to show a quickening of the personal representative's conscience. As we noted earlier, in its opinion in *State v. Ward,* the Missouri Supreme Court recently explained the requirements for a valid oath. 242 S.W.3d at 703. In *Ward,* the Missouri Supreme Court was faced with a situation where a defendant stated that he would not take an oath but stated that he would tell the truth on the stand. *Id.* at 701. The trial court refused to allow him to testify on the grounds that he would not take an oath. *Id.* On appeal, the Supreme Court affirmed the trial court's decision and held that the defendant's statement that he would tell the truth was insufficient to quicken his conscience. *Id.* at 704 ("[A]lthough [the defendant] stated he would tell the truth, the statement that he would tell the truth was insufficient to show a quickening of [his] conscience.") We glean from the Missouri Supreme Court's language in *Ward* that a mere statement by a witness that he will tell the truth is, by itself, insufficient to constitute a valid oath because the statement does not show a quickening of his conscience.

Given the Supreme Court's holding in *Ward,* we find that, in our case, the trial court's exchange with the personal repre-

sentative in which the trial court asked him to verify that he was telling the truth and the personal representative's statement that he was telling the truth was insufficient to quicken the personal representative's conscience. The trial court, therefore, failed to administer a valid oath to the personal representative as contemplated by section 491.380.2 or section 492.030–040 and could not rely on his unsworn statement as evidence to justify approving the settlement. *Dickerson,* 55 S.W.3d at 874; *State ex rel. Dixon v. Darnold,* 939 S.W.2d 66, 69 (Mo.App. S.D. 1997).

In our ruling today, we offer no opinion as to whether the subject settlement proposal is in the best interest of the Estate. It may or may not be in the best interest of the Estate. However, the trial court's ruling must be based upon substantial *evidence,* not argument of counsel.

Because there is no substantial evidence to support the trial court's judgment, we reverse and remand to the trial court with instructions for the trial court to resume the evidentiary hearing for the purpose of obtaining substantial evidence to support any ruling or judgment of the trial court on the personal representative's motion to review and determine whether the settlement offer tendered to settle the discovery of assets proceeding in the underlying case should or should not be approved by the trial court.

VICTOR C. HOWARD, P.J., and JOSEPH M. ELLIS, J., concur.